## Travelers Ins. Co. v. Wright.

January 14, 1949.

V. O. Blackburn and Ben D. Smith for appellant.

B. J. Bethurum and C. Homer Neikirk for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Reversing.

Appellant insured appellee under one of its standard automobile liability policies. The vehicle covered was a 1½ ton truck. While the policy was in force, this truck was involved in two accidents which resulted in a $1,178 loss, the value of cream being transported. This amount was paid by appellee to the Somerset Creamery Company, the owner of the cream, and a judgment therefor was obtained against appellant.

The policy covers property damage liability up to $5,000 for each accident. It provides, however, under the title "Exclusions" that the policy "does not apply * * * to injury to or destruction of property owned by, rented to, in charge of, or *transported by the insured."* (Our italics)

Appellee's claim is based on a loss arising from the destruction of property being transported by him. If the exclusion above quoted may be relied on by appellant, such loss is not recoverable under the insurance contract. For this reason the lower Court sustained a general demurrer to appellee's original petition, with which he had filed the policy as an exhibit.

By amended petition appellee alleged that when the policy was delivered to him the exclusion provisions thereof were effectively concealed by having a rider pasted over them so that the insured had no knowledge of their existence. It was alleged this concealment was either fraudulent or negligent. A jury verdict for appellee was returned on the issue presented by the amended petition.

The parties in their briefs discuss a number of propositions, including the authority of the insurance agent to effect cargo insurance, the construction and alteration of contracts, and oral agreements and representations. We do not believe these matters go to the heart of this case. The fundamental question is whether or not the exclusion provisions in the policy were so concealed or obliterated by appellant that they were effectively canceled. If so, appellant would be estopped to rely upon them to defeat appellee's claim. If not, this defense may be asserted.

It appears the standard insurance policy form had two riders affixed thereto so that when folded they covered the section of the policy entitled "Exclusions." The testimony of appellee and his attorney established that the riders were glued, or pasted, at the upper left hand corner of this section, and were also glued down at about the middle of the paragraph. Appellee's attorney had forcibly separated them from the policy (except at the upper left hand corner) before the instrument was filed as an exhibit.

Appellee testified he read over the policy after its delivery to him, but was unable to find any exclusions because of the physical position of the riders. His attorney went further and stated that the latter were glued around the edges, as well as at the upper left hand corner and in the middle, so that they could not be folded back to permit the reading of this part of the policy. He testified the riders were "so pasted and glued down that it was impossible to see any part of the exclusions." This answer states as a conclusion the fact in issue. Appellee's own testimony does not support it. He stated that one drop of glue in the middle of the page was the only place he knew of where the riders were "stuck down on the policy."

The original policy has been sent up with the record, and we now have it before us. The two papers which lay over the "Exclusion" section are still glued at the upper left hand corner, and it is apparent there was a small spot of glue about the middle of the page which caused a slight tearing of the papers when they were forcibly separated by appellee's attorney. We are unable to find upon close inspection any physical evidence that the riders were otherwise glued, pasted, or affixed over this part of the policy. Our examination indicates the exclusion provision in controversy could have been read by folding back the papers without having torn them loose as was actually done. The inadvertent attachment of the riders in the middle of the "Exclusion" section would not lead a reasonable person to conclude this part of the policy was canceled.

Ordinarily the question of concealment or cancellation would be for the determination of a jury. However, when the well-authenticated circumstances unerringly

establish the principal fact in issue, it must be accepted as against doubtful positive testimony to the contrary. Haffler v. McKinney, 288 Ky. 782, 157 S. W. 2d 92. Another settled rule is that where the physical situation points so certainly to the truth of a particular fact as to leave no room for a contrary determination, the fact established by such physical evidence must stand uncontrovertible. Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S. W. 2d 879; Davis v. Bennett's Adm'r, 289 Ky. 516, 159 S. W. 2d 39. In both of these latter cases it was held the physical evidence, as a matter of law, was determinative of the issue presented.

The physical evidence in this case conclusively demonstrates the exclusion provisions in the policy were not effectively concealed, obliterated or canceled, nor could the manner of affixing the riders reasonably lead appellee to so believe. The issue of fraud or negligence, concerning which there was no positive proof, disappears from the case. Appellant was not estopped to rely upon the particular exclusion invoked, and it constituted a valid defense to this action. A peremptory instruction should have been given for appellant at the conclusion of the evidence.

The judgment is reversed for proceedings consistent herewith.